# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Lauren J. Elliot
Direct: +1 212.351.3848
Fax: +1 212.351.5358
LElliot@gibsondunn.com

November 1, 2021

<u>VIA ECF AND E-MAIL</u>

Caroline Ramsey Taylor, Esq.
Milberg Coleman Bryson Phillips Grossman, PLLC
800 S. Gay Street, Suite 1100
Nashville, Tennessee 37929

Re:     *Finch v. Xandr, Inc.*, No. 1:21-cv-05964-VM

Dear Caroline:

Pursuant to Rule II.B of Judge Marrero's Individual Practices, Defendant Xandr Inc. ("Xandr") intends to move to dismiss Plaintiff's Complaint on the grounds of *forum non conveniens* and international comity, should Plaintiff not voluntarily withdraw her action. As you are aware, Plaintiff is a citizen of the United Kingdom who alleges that Xandr created, tracked, monitored, and processed cookies that were placed on her device when she visited third-party websites in the U.K., which allegedly violated the U.K.'s General Data Protection Regulation ("U.K. GDPR"). Compl. ¶¶ 195–219. Based on these allegations, Plaintiff seeks to represent a class of persons who reside or resided in England and Wales and allegedly suffered injuries under U.K. law. *Id.* ¶¶ 231–36.

To our knowledge, the only other lawsuit filed in the United States that asserted nearly identical violations of the U.K. GDPR was brought by your law firm, and that case was dismissed on *forum non conveniens* and international comity grounds. *Elliott v. PubMatic, Inc.*, No. 21-cv-01497-PJH, 2021 WL 3616768 (N.D. Cal. Aug. 16, 2021). Plaintiff's Complaint should be dismissed for similar reasons: ***First***, Plaintiff's choice of forum is entitled to minimal, if any, deference because Plaintiff is a non-U.S. citizen and asserts foreign law claims. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). Plaintiff also seeks to represent a class of persons who reside or resided in the U.K., entitling her choice of forum to even less deference. *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006), *aff'd*, 233 F. App'x 83 (2d Cir. 2007).

***Second***, the U.K. is an adequate alternative forum. A U.K. forum is available to hear and resolve this case because Xandr is agreeing to be amenable to process in the U.K. if the Court dismisses this case on *forum non conveniens* (or international comity) grounds without waiver of any other defenses. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). And the U.K.'s judicial system is held in high regard and has consistently been found to be adequate for these purposes. *See, e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

***Third***, the relevant private interest factors—the convenience of the litigants—favor

**GIBSON DUNN**

November 1, 2021
Page 2

dismissal.[1]  This Court's inability to compel evidence from non-party website publishers in the U.K. weighs heavily in favor of dismissal.  *Pollux*, 329 F.3d at 75 (affirming district court's determination that lack of availability of compulsory process weighed heavily in favor of dismissal where defendant "identified several key witnesses whose testimony can be compelled only in England while plaintiffs have not demonstrated that any material witnesses would be unavailable there").  Rule 45(b)(2) generally prohibits the enforcement of subpoenas to third parties served outside of New York and more than 100 miles outside of this district, and that rule and 28 U.S.C. § 1783 expand that power to individuals abroad only when the individual served is "a national or resident of the United States."  28 U.S.C. § 1783.[2]  Testimonial and documentary evidence from U.K. website publishers will be relevant to disproving Plaintiff's allegations that Xandr did not have user consent, or that Xandr's "reliance on consent obtained by publishers is insufficient."  Compl. ¶ 136.  Xandr will be prejudiced if it cannot compel the production of potentially critical testimony and evidence from the U.K., especially since Plaintiff alleges that "[a]pproximately 37% of UK websites use Xandr to track and identify users."  Compl. ¶ 125.  Moreover, Plaintiff (and the proposed class) resides in the U.K., and while Xandr has New York employees, the employees with technical knowledge germane to this U.K. GDPR case are in Europe.  Thus, most party witnesses will be inconvenienced by litigation in New York.

**Fourth**, the relevant public interest factors also favor dismissal.  The U.K. plainly has a stronger interest in hearing and resolving this dispute. Plaintiff and the entire Proposed Class are residents or former residents of England and Wales, who suffered alleged injuries in England and Wales.  The U.K. enacted the Data Protection Act 2018 and, following its departure from the European Union ("EU"), created and implemented the U.K. GDPR to govern precisely those claims.  The U.K. also has a regulator, the Information Commissioner's Office ("ICO"), with the responsibility to "monitor and enforce the application" of the U.K. GDPR, "handle complaints lodged by a data subject," and "conduct investigations" regarding the application of the U.K. GDPR. U.K. GDPR Art. 57(1).  In advocating for the application of U.K. substantive law, Plaintiff concedes that the "United Kingdom is the jurisdiction with an interest in having its laws applied to this case" and "an interest in protecting the data privacy of its citizens, regardless of where the [] defendant is domiciled."  Compl. ¶¶ 235–36.  In contrast, New York has no relationship to this case aside

---

[1]  Contrary to Plaintiff's allegations, Xandr has **not** "submitted to the exclusive jurisdiction of federal and state courts located in the State of New York" (Compl. ¶ 24) for this action.  That the "Terms of Use" on Xandr's corporate website state that any legal action between Xandr and users of its corporate website **concerning those Terms of Use** shall be brought in a New York court is irrelevant to the appropriate forum for this case—an action under U.K. law brought by an alleged U.K. data subject who has had no direct interaction with Xandr (and does not allege to have ever visited Xandr's corporate website).  Compl. ¶ 85.

[2]  Importantly, courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention does not render litigation in the U.S. convenient.  *See Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) (collecting cases).

# GIBSON DUNN

November 1, 2021
Page 3

from the fact that Xandr is located here, but Xandr also has a presence in the U.K.  And the U.K.'s interest in protecting its own citizens far outweighs any possible New York interest.

This case also will require the interpretation and application of recently enacted, complicated, and unsettled *foreign* law.  Courts evaluating *forum non conveniens* factors have consistently held that the burden associated with having a U.S. court interpret and apply a foreign jurisdiction's law favors dismissal.  *Pollux*, 329 F.3d at 76.  The heavy burden associated with the need to apply foreign law alone would weigh in favor of dismissal, but that burden is even heavier where, as here, it involves the interpretation of complex law that is evolving in the U.K.  In fact, the U.K. courts have not yet resolved fundamental issues concerning the interpretation of the EU's GDPR, much less the U.K.'s more recent version of the law.  *See Lloyd v Google LLC* [2019] EWCA Civ 1599 (pending in the U.K. Supreme Court is claimants' argument, *inter alia*, that compensation should be payable to data subjects affected by Google's breach for the "commission of wrong" irrespective of whether they can show any pecuniary damage), available at https://www.supremecourt.uk/cases/uksc-2019-0213.html.  And Plaintiff's claim that the GDPR "is quite straightforward" and "easy to understand," "such that application of foreign law should not be a burden," Compl. ¶¶ 178, 229, stands in stark contrast to the views of the U.K.'s own ICO and many commentators on the U.K. GDPR, who have described it as complicated, unwieldy, and evolving.  Finally, proceeding in this forum will impose an undue burden on the Court and jurors—the public interest in "protecting jurors from sitting on cases" with no direct "relevance to their own community weighs heavily in favor of" dismissal.  *Alfadda v. Fenn*, 159 F.3d 41, 46–47 (2d Cir. 1988).

In addition to *forum non conveniens*, Plaintiff's Complaint should also be dismissed on the grounds of international comity.  Application of the international adjudicatory comity doctrine normally takes the form of a "discretionary act of deference" in which a U.S. court "decline[s] to exercise jurisdiction in a case" that would be more "properly adjudicated in a foreign state."  *In re Maxwell Comm. Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996).  Deference "to the foreign court is appropriate as long as the foreign proceedings are procedurally fair and … do not contravene the laws of public policy of the United States."  *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C. V.*, 412 F.3d 418, 424 (2d Cir. 2005).  For the same reasons articulated above in the *forum non conveniens* analysis, international comity favors dismissal of this action.  The U.K. is plainly an adequate forum.  *See, e.g.*, *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d. Cir. 1998).  The United States has a strong interest in respecting other countries' judicial processes and allowing localized disputes to be "decided at home," which warrants dismissal.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

For all of these reasons, Xandr respectfully requests that Plaintiff voluntarily withdraw her Complaint to avoid unnecessary motion practice and inappropriately burdening the Court and Xandr.

**GIBSON DUNN**

November 1, 2021
Page 4

Sincerely,

*/s/ Lauren J. Elliot*

Lauren J. Elliot

cc:  Hon. Victor Marrero, USDJ (*via ECF and E-Mail*)
     All counsel of record (*via ECF*)