UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ DIANA FINCH, on behalf of herself   │
│ and all others similarly situated,  │
│                                     │
│                         Plaintiff,  │
│                                     │
│     - against -                     │
│                                     │
│ XANDR, INC.,                        │
│                                     │
│                         Defendant.  │
└─────────────────────────────────────┘
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/2021

21 Civ. 5964 (VM)

DECISION AND ORDER

**VICTOR MARRERO, United States District Judge.**

Plaintiff Diana Finch ("Finch") brings this purported class action, on behalf of herself and all others similarly situated, against defendant Xandr, Inc. ("Xandr"), alleging violations of the United Kingdom's General Data Protection Regulation ("UK GDPR"). (See "Complaint," Dkt. No. 1.)

Now before the Court are Xandr's letter motion seeking leave to file a motion to dismiss on the grounds of forum non conveniens and international comity (see "Letter Motion," Dkt. No. 19) and Finch's letter in opposition. (See "Opposition," Dkt. No. 20.) The Court now denies Xandr's motion for a conference, (see Dkt. No. 21), and deems Xandr's Letter Motion as a motion to dismiss the complaint due to

1

forum non conveniens and international comity.[1] For the reasons discussed below, the motion to dismiss is granted.

## I. BACKGROUND

A. BACKGROUND[2]

Xandr[3] is a digital technology company that helps digital publishing and advertising companies reach their target audiences through "the use and dissemination of personal data." (Complaint ¶ 1.) Its business involves providing companies with the necessary technology for websites, apps, and other internet-connected platforms to show advertisements to its users. Relatedly, Xandr's technology allows advertisers to show their ads to individuals who may be interested in their product — so-called "targeted ads." Xandr's product hinges on its creation and placement of unique

---

[1] See Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] These facts are drawn from the Complaint. Because the Court is reviewing a motion to dismiss on the grounds of forum non conveniens, the Court will accept the facts alleged in the complaint as true. See Aguas Lenders Recovery Grp. LLC v. Suez, S.A., 585 F.3d 696, 697 (2d Cir. 2009). Except where specifically quoted below, no further citation will be made to the Complaint or the documents discussed therein.

[3] Xandr is a wholly owned subsidiary of AT&T, Inc. It is incorporated in Delaware, with its principal place of business in New York, New York. Finch is a citizen of, and domiciled in, the United Kingdom, and all putative class members are domiciled in the United Kingdom. While the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), it also has jurisdiction over these claims pursuant to 28 U.S.C. § 1332(a) because the requirements of complete diversity are satisfied.

identifiers known as "cookies" on internet users' devices.[4] When a cookie is placed on a device, Xandr is able to read, collect, and share personal data about the user.

Finch and other purported class members visited third-party websites that used Xandr technology. Upon their visit, Xandr placed unique cookies on each user's device, enabling it to track the user's internet behavior across websites. The users have no direct interaction with Xandr, but Xandr is able to record information about their internet usage. Xandr collects a multitude of information including the user's IP address, location information, browsing and search history, and whether a user has clicked on any targeted ads. This personal data is then shared with advertisers, who consider the data when bidding on potential ad space. The precise mechanics of the bid process are not relevant to the motion before the Court today, but Xandr has almost 2,000 third-party partners with which it shares users' personal data and over one-third of United Kingdom websites use Xandr's identification and tracking services.

---

[4] Xandr cookies are static text files stored in the user's browser. The file itself does not create a legal injury, but the subsequent setting and reading of the file without user consent allegedly breaches the UK GDPR. Each cookie has a unique identification number ("the cookie ID") that is created when Xandr places a cookie on a device. The cookie ID identifies the user and qualifies as personal data under the UK GDPR.

3

The United Kingdom has taken steps to protect internet users' personal data and privacy, most notably through the UK GDPR, which implemented the European Union's General Data Protection Regulation ("EU GDPR") within the United Kingdom. The UK GDPR is a complex, broad statute, but to put things simply for the purposes of the dispute at hand, it applies to the automated processing of personal data of individuals in the United Kingdom. The law requires companies to gain user consent prior to processing any personal data from that user, which includes placing any sort of online identifier, such as cookies or a cookie ID, on a user's device and collecting data. Consent must be freely given, specific, informed, and unambiguous. Users must also be notified of the purpose and basis for a cookie ID prior to the ID's creation and placement on a user's device.

Finch alleges Xandr violates the UK GDPR in several ways, including in its process for setting cookie IDs, the monitoring of data that follows, and its failure to obtain timely and informed user consent. Xandr does not dispute that it is subject to the UK GDPR or that cookie IDs are personal data under the UK GDPR.

B.   PROCEDURAL HISTORY

The UK GDPR provides a private right of action for users who believe that their rights were infringed by improper

4

processing of their personal data. While the EU GDPR requires complaints to be filed in a European court, the UK GDPR, which is "materially identical" to its counterpart in all other regards (Complaint ¶ 32), allows plaintiffs to file a complaint in any court, including those in the United States.

Finch filed this suit in the Southern District of New York on behalf of herself and "[a]ll persons residing or who resided in England and Wales who used Chrome, Edge, or Internet Explorer browsers and have had a Xandr cookie placed on their device [from May 25, 2018 through present]." (Complaint ¶ 238.) Xandr filed the Letter Motion expressing its intent to file a motion to dismiss due to forum non conveniens and international comity. Finch opposed the motion, in part because the terms of use on Xandr's website (hereinafter, "the Terms of Use") state that the user agrees "that any legal action or proceeding between Xandr and [the user] for any purpose concerning these Terms or the parties' obligations hereunder shall be brought exclusively in a federal or state court of competent jurisdiction sitting in New York." (Opposition at 1.)

On November 29, 2021, the Court requested supplemental letter briefs from each party addressing the question of whether an enforceable forum-selection clause covered the

5

claims at issue. (See Dkt. No. 23.) The parties responded on December 6, 2021. (See Dkt. Nos. 24, 26.)

## II. LEGAL STANDARD

The doctrine of forum non conveniens allows a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). The decision whether to grant a motion to dismiss on grounds of forum non conveniens rests "wholly within the broad discretion of the district court." Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

When evaluating a motion to dismiss for forum non conveniens, courts conduct a three-factor assessment, looking at (1) the amount of deference to be accorded to the plaintiff's choice of forum; (2) the adequacy of the defendant's proposed alternate forum; and (3) the balance between the private and public interests implicated by the plaintiff's forum choice. See Fasano v. Guoqing Li, 482 F. Supp. 3d 158, 167 (S.D.N.Y. 2020). The Second Circuit has held that "[w]here the parties have contractually selected a forum, however, the forum selection clause 'substantial[ly] modifi[es]' the forum non conveniens doctrine and the 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'"

6

Fasano v. Yu Yu, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam) (emphasis in original) (quoting Martinez v. Bloomberg LP, 740 F.3d 211, 218 (2d Cir. 2014)).

Nevertheless, courts do not automatically presume a forum-selection clause is enforceable. "Instead, a district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause." Id. In cases where a forum-selection clause exists, determining whether those three factors weigh in favor of enforceability is the first step in the court's determination of the proper forum.

### III. DISCUSSION

A. FORUM-SELECTION CLAUSE

Because the existence of an enforceable forum-selection clause significantly alters the forum non conveniens analysis, the Court begins by determining whether such a clause governs this dispute. The Court concludes that neither the claims at issue nor the plaintiff are subject to the forum-selection clause set forth in the Terms of Use, so the presumption of enforceability does not apply to the forum-selection clause here.

7

First, the Complaint lacks any allegation that the Terms of Use apply to this dispute or that Finch was bound by the Terms of Use. Finch cites the Terms of Use when alleging New York is the proper venue but makes no attempt to connect those terms to her claims or the actions that led to her purported injury. And, as Finch herself quoted, the forum-selection clause in the Terms of Use covers actions "for any purpose *concerning these Terms or the parties' obligations hereunder*." (Complaint ¶ 24 n.1 (emphasis added).) Thus, it is clear that the forum-selection clause applies only to claims that concern the Terms of Use. Accepting the facts as alleged in the Complaint, Xandr's actions did not violate or implicate the Terms of Use found on its website.

Second, Finch never alleges that she visited the Xandr website — and users become parties to the Terms of Use only upon accessing or using the Xandr website. (See http://xandr.com/legal.) Finch's claims are instead premised on her visiting third-party websites that used Xandr technology to place Xandr cookies on her device. Because her claims do not involve visiting Xandr's website, Finch was never bound by the Terms of Use and the terms cannot be said to govern Finch's dispute with Xandr.

Third, and finally, even if the Court were to accept that the Terms of Use could apply here, the Terms include a

8

Geographic Restriction clause, which states, "Xandr provides this Site for use only by persons located within the United States . . . Those who choose to access our Site from other locations do so on their own initiative and are responsible for compliance with local laws." (Id.) As the Complaint notes, Finch and all purported class members are not located in the United States, so this Geographic Restriction clause directly applies. The clause continues to say, "Certain companies affiliated with Xandr or AT&T provide services and operate websites in various other countries throughout the world, some of which websites may be linked to [or] from our Site. Any such International websites *will be governed by their own terms of use . . . and not by these Terms*." (Id. (emphasis added).) This statement prohibits the exact fact pattern before the Court here: a user's visit to the website of a third-party Xandr client implicating the Terms of Use.

In sum, when the Court views the Terms of Use in totality and considers their relation to the facts alleged in the Complaint, it is amply clear that neither the claims at issue nor the plaintiff are subject to the Terms of Use and its forum-selection clause. Both the claims and the parties must be subject to a forum-selection clause for it to be presumptively enforceable, see Fasano, 921 F.3d at 335, so

9

this forum-selection clause is unenforceable. The Court will give no weight to the forum selected in the Terms of Use.

B.   FORUM NON CONVENIENS

Having found that there is no contractually selected forum governing this dispute, the Court turns to the three-factor assessment of whether to dismiss on the grounds of forum non conveniens.

The Court begins by determining the amount of deference to be accorded to Finch's choice of forum. Typically, courts accord great deference to a plaintiff's venue selection. See Goldfarb v. Channel One Russia, 442 F. Supp. 3d 649, 657 (S.D.N.Y. 2020). However, the degree of deference accorded "moves on a sliding scale depending on several relevant considerations." Iragorri, 274 F.3d at 71. Certain factors tip the scale towards giving greater deference to the plaintiff's choice, such as whether the selected forum is the plaintiff's home forum and whether there is a "bona fide connection" between the plaintiff or the lawsuit and the selected forum. Id. at 72.

Similarly, the Second Circuit and the Supreme Court have identified factors that weigh against deferring to the plaintiff's choice. Most notably, "the choice of a United States forum by a foreign plaintiff is entitled to less deference," in part because when a foreign plaintiff selects

an American forum, "a plausible likelihood exists that the selection was made for forum-shopping reasons." Id. at 71 (discussing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)).

The circumstances in this case dictate that this Court accord little deference to Finch's choice of forum. Finch is a foreign plaintiff bringing claims on behalf of an entirely foreign purported class, based solely on foreign law. The litigation's only apparent connection to this District — and to the United States — is through the defendant. Given the lack of connection between the chosen forum and both the plaintiff and the legal claims, the Court gives minimal weight to the plaintiff's choice of forum. See, e.g., In re Citigroup Inc. Sec. Litig., No. 09 MD 2070, 2014 WL 470894, at *4 (S.D.N.Y. Feb. 6, 2014).

Next, the Court must consider the adequacy of the defendant's proposed alternate forum. Here, Xandr proposes the United Kingdom as the alternative, and more appropriate, forum. An alternative forum "is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003). The analysis here is not complex: Xandr consents to be amenable to service in the United Kingdom, (see Letter

11

Motion at 1), and there is no question that the United Kingdom permits litigation regarding the UK GDPR. Courts in this Circuit have long had "high regard for [British] courts' fairness and commitment to the rule of law," Pollux Holding Ltd., 329 F.3d at 75, and this Court is confident that a court in the United Kingdom could adjudicate this dispute with utmost competence. In fact, given the legal claims at issue, which arose under the law of the United Kingdom, those courts are likely better suited to resolve this dispute.

Finally, the Court analyzes "the balance between the private and public interests implicated by the choice of forum." Fasano, 482 F. Supp. 3d at 167. Relevant private interests include access to evidence, the availability and ease of producing witnesses, and "all other practical problems that make trial of a case easy, expeditious, and inexpensive." Gilbert, 330 U.S. at 508. The private interests do not clearly favor either party in this dispute. Whether the case is tried in this District or the United Kingdom, there will be evidence and witnesses that need to travel long distances.

But while the parties' private interests do not tilt the scales, the public interest overwhelmingly favors applying the doctrine of forum non conveniens. Relevant public interest factors include mitigating court congestion,

12

avoiding the imposition of jury duty on a community far removed from the dispute, and ensuring members of the public can witness a trial that may impact their rights, instead of the trial occurring "where they can learn of it by report only." Id. at 508–09. Or, as the Second Circuit succinctly summarized, there is "'a local interest in having localized controversies decided at home,' and the interest in having foreign law interpreted by a foreign court." Figueiredo Ferraz e Engenharia de Projeto Ltda v. Republic of Peru, 665 F.3d 384, 389—90 (2d Cir. 2011) (quoting Gilbert, 330 U.S. at 509).

Here, the public interest in having this dispute adjudicated in the United Kingdom is especially great, as the Complaint presents novel questions regarding the UK GDPR. It is in the public interest that courts in the country of enactment interpret the law in the first instance, in a trial setting where affected members of the public can easily attend and observe.

While Finch aptly points out that "the need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens," (Opposition at 3 (quoting Alnwick v. European Micro Holdings, Inc., 29 F. App'x 781, 784 (2d Cir. 2002)), all factors in the forum non conveniens analysis indicate dismissal is appropriate. The United Kingdom would

13

provide a more suitable forum for this adjudication. Accordingly, this Court will dismiss the action on the grounds of forum non conveniens.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Xandr, Inc. to dismiss the complaint of plaintiff Diana Finch on the grounds of forum non conveniens is **GRANTED**. The Clerk of the Court is directed to terminate all pending motions and close the case.

**SO ORDERED.**

Dated:   December 14, 2021
         New York, New York

_____
Victor Marrero
U.S.D.J.